# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

LUCENDA NICHOLES,

                Plaintiff,

v.                                         CIVIL ACTION NO. 5:16-cv-10203

COMBINED INSURANCE COMPANY
OF AMERICA,

                Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *First Amended Class Action Complaint* (Document 5), *Combined Insurance Company of America's Motion to Dismiss* (Document 9) and *Memorandum in Support of Motion to Dismiss* (Document 10), *Plaintiff Lucenda Nicholes' Opposition to Defendant's Motion to Dismiss First Amended Complaint* (Document 16), and *Combined Insurance Company of America's Reply in Support of Motion to Dismiss* (Document 17), as well as all attached exhibits. In addition, the Court has reviewed the *Plaintiff's Motion for Leave to File Second Amended Complaint and Memorandum of Law in Support* (Document 24), the attached proposed *Second Amended Class Action Complaint* (Document 24-1), *Combined Insurance Company of America's Response in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint and Memorandum of Law in Support* (Document 25), and the *Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Leave to File Second Amended Class Action Complaint and Memorandum of Law in Support* (Document 26).

For the reasons stated herein, the Court finds that the motion to amend should be granted, and the motion to dismiss should be granted in part and denied in part.

## MOTION TO AMEND

The Plaintiff's response to the motion to dismiss indicated that she would seek to amend her complaint to clarify the factual and legal basis of her claims if the motion to dismiss were granted. The Court entered an order requiring her to file a separate motion to amend if she wished to do so. The Plaintiff filed a motion to amend, together with her proposed second amended class action complaint. She argues that she should be permitted to amend under the permissive standard for amendments early in a case. The Defendant opposes the motion to amend, arguing that it would be futile.

Rule 15(a)(2) of the Federal Rules of Civil Procedure encourages Courts to freely grant motions for leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010). "Motions to amend are typically granted in the absence of an improper motive, such as undue delay, bad faith, or repeated failure to cure a deficiency by amendments previously allowed." *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 447 (4th Cir. 2004).

The Court finds that the filing of an amended complaint in this case would not prejudice the Defendant, and that the amended complaint was not offered in bad faith.[1] Given the status of

---

1 The Defendant suggests that the Plaintiff's clarification regarding when she became aware that her Medicaid status would preclude her from receiving insurance benefits may constitute bad faith. Attorneys should take care to ensure that the facts alleged in a complaint are correct and reflective of their clients' recollections of events. However,

the fully briefed motion to dismiss on the prior complaint, and the futility arguments briefed in response to the motion to amend, the Court will combine the futility analysis with the arguments made relative to the motion to dismiss to determine whether the amended complaint contains any viable cause(s) of action. Thus, the factual allegations below are drawn from the proposed second amended complaint.

## FACTUAL ALLEGATIONS

The Plaintiff, Lucenda Nicholes, alleges that "Combined Insurance routinely and systematically sells policies to West Virginia insurance consumers that, by law, are ineligible for the insurance benefits for which they pay premiums under these Combined Insurance policies because they are Medicaid recipients" and fails to disclose the illusory nature of the insurance. (Sec. Am. Compl. at ¶ 9.) She asserts that sales agents are trained to "canvass poor and minority neighborhoods" and use high-pressure sales tactics. (*Id.* at ¶ 18.) Agents do not disclose that benefits under the health and accident insurance policies are unavailable to Medicaid recipients, and that any insurance benefits would be denied or paid directly to medical providers. Instead, they use prepared insurance applications that indicate the applicant is not a Medicaid recipient without raising the issue with the consumers. Combined Insurance does not offer a refund of any premium payments for Medicaid recipients.

Ms. Nicholes lives on Social Security of less than $800 per month. She receives Medicaid. A Combined Insurance agent visited her home in September 2013 to sell her an "Accident & Sickness Protector" policy, which she purchased by paying an initial premium of $54.17.

---

amending a complaint in part to correct an error is not evidence of bad faith. The Court refuses to presume, without factual support, that the Plaintiff and/or her counsel chose to lie in the proposed second amended complaint to avoid the potential statute of limitations problem raised by the Defendant.

Subsequently, her bank account was debited $54.17 per month. The agent "unilaterally filled out the entire application…without obtaining material, relevant information from the Plaintiff in order to accurately respond to the questions asked in the application, including her Medicaid status." (*Id.* at ¶ 31.) He marked, incorrectly, that she was not on Medicaid, and did not inform her that her Medicaid status would render her ineligible for policy benefits. The agent showed Ms. Nicholes only the signature page of the application, as well as a separate form authorizing automatic debit payments. The same agent sold Ms. Nicholes another "Accident & Sickness Protector" policy on or about November 25, 2014, using an electronic application he had previously filled in. He again presented only the signature page of the application to Ms. Nicholes. The agent sold Ms. Nicholes a third policy, with the same sales methods, on March 17, 2015, after leading her to believe her November 2014 policy had lapsed. After the purchase of the March 2015 policy, "Combined Insurance began debiting Plaintiff's bank account twice every month in the amount of $54.17 to collect the monthly premiums on both the March 2015 and the November 2014 policies." (*Id.* at ¶ 41.) Ms. Nicholes alleges that she became aware of the multiple debits because they caused her account to be overdrawn. She began calling Combined during the summer of 2015 to address the double withdrawals on her account. During those communications, a Combined employee asked about her Medicaid status, but did not inform her that she could not receive insurance benefits while on Medicaid. Ms. Nicholes obtained counsel due to the account debits and overdraft fees in the fall of 2015. She became aware that she was ineligible for benefits because of her Medicaid status after her counsel obtained documents from Combined in December 2015.

The Plaintiff brings this case on behalf of herself and the following proposed class:

4

> (a) All West Virginia residents who purchased a Combined Supplemental Insurance policy under which Medicaid recipients are ineligible to receive payment of benefits under the policy; and
> (b) The Supplemental Insurance policy was purchased in the four years preceding the filing of this lawsuit at which time the insured was covered by Medicaid benefits.

(*Id.* at ¶ 54.) She seeks relief under the Insurance Trade Practices Act, the Consumer Protection Act, and for mutual mistake and rescission. Ms. Nicholes seeks class certification; a declaration that the described sale of supplemental insurance to Medicaid recipients violates the Insurance Practices Act and the Consumer Protection statute; an injunction preventing Combined Insurance from selling to Medicaid recipients; compensatory damages, actual damages, and statutory damages; rescission of the insurance policies and costs and attorneys' fees.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[2] "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id*. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

2 The same standard is applicable to a motion for judgment on the pleadings pursuant to Rule 12(c). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

Combined moves to dismiss and to deny the motion to amend. It argues that Ms. Nicholes' claims are beyond the one-year statute of limitations applicable to the Unfair Trade Practices Act (UTPA), and that the West Virginia Consumer Credit Protection Act (WVCCPA) is not applicable to insurers. Combined also argues that any confusion regarding Ms. Nicholes' ability to receive insurance benefits while on Medicaid is a mistake of law, not a mistake of fact as required for a rescission claim based on mutual mistake. Ms. Nicholes responds that a two-year statute of limitations is applicable to her UTPA claims because they are based on fraud, and that the WVCCPA is applicable because her premium was paid by an automatic monthly debit. In her amended complaint, she alleges that she initiated suit less than one year after she learned that her Medicaid status would preclude her from receiving benefits from Combined. Ms. Nicholes also argues that her rescission claim is based on a mistake of fact: that both parties mistakenly believed that she, and other putative class members, would receive benefits under the policies.[3]

   A.  *Count One – Unfair Trade Practices Act*

In West Virginia, "A five step analysis should be applied to determine whether a cause of action is time-barred."

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be

---

[3] The Court recognizes the potential inconsistency in the Plaintiff's argument that her UTPA claims are based on fraud and her argument that both parties "mistakenly" believed she could receive benefits under the policy in support of her rescission claim, particularly in light of the language of the complaint. However, given the Court's analysis and the bases of the rulings herein, the Court will not address this issue further.

> applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action. Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255, 258 (W. Va. 2009) (internal citation omitted). The Court finds that Combined Insurance is correct that the statute of limitations for UTPA claims is one year. Syl. Pt. 1, *Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 608 (W. Va. 1998); *Casto v. Nw. Mut. Life Ins. Co.*, No. CIV.A. 2:09-CV-00377, 2009 WL 2915132, at *3 (S.D.W. Va. Sept. 2, 2009) (Goodwin, C.J.).

The elements of the UTPA claim occurred when the insurance contracts were sold in September 2013, November 2014, and March 2015. Ms. Nicholes alleges that she was ineligible to receive benefits under the policies at any point because she was on Medicaid, and that Combined purposely sold policies without disclosing that information. Her second amended complaint alleges that she learned that "her Medicaid status had an impact on her right to receive payment of insurance benefits under the policies" only after receiving a letter from Combined, dated December 3, 2015, that suggested she could receive a refund based on her Medicaid status. (Sec. Am. Compl. at ¶ 47.) She initiated this suit on or about August 23, 2016. Though the parties' briefing indicates that there will be a factual dispute regarding when Ms. Nicholes learned of the Medicaid issue, the Court assumes that her allegations are true for purposes of both the motion to dismiss and the determination of whether her amendment would be futile. She also alleges that Combined

concealed the fact that Medicaid status prevented consumers from receiving benefits by pre-filling insurance applications. Because she alleges that she discovered the elements of her UTPA claim less than one year before she filed the claim, her amendment is not futile, and the Defendant's motion to dismiss Count One based on the statute of limitations should be denied.

### B. Count Two – West Virginia Consumer Credit Protection Act

The Court finds that the WVCCPA is not applicable to Ms. Nicholes' claims. The WVCCPA prohibits certain intrusive and/or deceptive debt collection practices. West Virginia Code § 46A-1-105 states that the WVCCPA "does not apply to…the sale of insurance by an insurer, except as otherwise provided in this chapter." W.Va. Code § 46A-1-105(a)(2). "'Debt collection' means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W.Va. Code § 46A-122(c). Judge Copenhaver recently analyzed the application of the WVCCPA to insurance payments, and found that without a "deferral of payment" there is no debt or claim, and thus no debt collection activity. *Hinkle v. Matthews*, No. CV 2:15-13856, 2016 WL 3945734, at *3 (S.D.W. Va. July 19, 2016) (Copenhaver, J.) Ms. Nicholes does not allege that Combined extended credit to her or permitted her to defer payments on her insurance policies. Thus, as in *Hinkle*, the sections of the WVCCPA dealing with debt collection are not applicable.

Ms. Nicholes relies in part on Article 6 of the WVCCPA, which provides for consumer protection in non-credit transactions. Section 46A-6-104 provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The definition of "services" contained in the WVCCPA expressly includes insurance. W.Va. Code § 46A-1-102(47). However, in *Hinkle,* Judge Copenhaver

9

concluded that the WVCCPA's general exclusion of insurance sales applies to Article 6, as Article 6 does not expressly provide that it is applicable to insurance. *Id.* at 4. As noted in *Hinkle*, the terms "services" is used throughout the WVCCPA, and finding that the WVCCPA *does* apply to insurance wherever the term "services" appears would render the insurance exclusion ineffective. Therefore, the WVCCPA is not applicable to the conduct described in the second amended complaint, and Combined's motion to dismiss should be granted as to Count Two.

### C. Count Three – Rescission

Rescission is the unmaking of a contract to restore the parties to their pre-contractual positions. *See Black's Law Dictionary* (10th ed. 2014). "A mutual mistake is one which is common to all parties, wherein each labors under the same misconception respecting a material fact or provision within the agreement." Syl. Pt. 4, *Smith v. Smith*, 639 S.E.2d 711, 712 (W. Va. 2006). In general, "the mistake must be one of fact, not of law [and] must be mutual and common to both parties." *Id.* at Syl. Pt. 5. However, "courts have formulated numerous exceptions to the general rule that a transaction or act of a party will not be set aside on the ground of mistake of law."[4] *Webb v. Webb*, 301 S.E.2d 570, 575 (W. Va. 1983). The West Virginia Supreme Court noted that "a mistake as to the legal effect of a contract, though a mistake of law, will be treated as a mistake of material fact where the mistake is mutual…and results in a written instrument which does not embody the 'bargained-for' agreement of the parties." *Id.* at 575 n. 5. In addition, "where a person is ignorant or mistaken with respect to his own antecedent and existing

---

4 Indeed, the Second Restatement of Contracts, which West Virginia courts largely follow, does not draw a distinction between mistakes of fact and mistakes of law. Restatement (Second) of Contracts § 151.

private legal rights…and enters into a transaction, the legal scope and operation of which he correctly understands, for the purpose of affecting his assumed rights, equity will grant relief." *Id.* Further, "[t]he jurisdiction of equity to reform written instruments, where there is a mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, if the evidence be sufficiently cogent to thoroughly satisfy the mind of the court, is fully established and undoubted." Syl. Pt. 2, *First Am. Title Ins. Co. v. Firriolo*, 695 S.E.2d 918, 920 (W. Va. 2010). Contracts or contract terms may also be voided for unconscionability. *See, e.g.*, *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 220–22 (W. Va. 2012).

In general terms, Ms. Nicholes alleges a mutual mistake of fact as to the most basic purpose of the contract: her ability to receive insurance benefits. Considered with more specificity, however, the facts do not support a mutual mistake of fact theory. Nicholes was aware that she received Medicaid, but was unaware that her Medicaid status would prevent her from directly receiving benefits under the supplemental insurance policies. She alleges that Combined was unaware "either that Plaintiff and Class Members were Medicaid participants or that Plaintiff and Class members were not eligible to receive and retain benefits from the insurance policies Defendant sold to them." (Sec. Am. Compl. at ¶ 105.) Ms. Nicholes' mistake is akin to that of the plaintiff in *Webb*, who sought to void his disclaimer to an inheritance. In *Webb*, the plaintiff's father died, and the plaintiff wanted the inheritance to go exclusively to his mother, in accordance with his father's wishes. An attorney assisted him in filing a disclaimer. However, because the plaintiff had a child, of whom the attorney was unaware, the effect of the disclaimer was to pass the plaintiff's interest in the inheritance to his daughter, rather than to his mother. The court concluded that the plaintiff had made a mistake of law because his misunderstanding was as to the

11

effect of the disclaimer under the laws of inheritance, rather than the existence of his child. *Webb*, 301 S.E.2d at 570–75 (W. Va. 1983). The court in *Webb* declined to permit rescission because the plaintiff's own negligence led to the mistake.[5] Similarly, Ms. Nicholes misunderstood the effect of her Medicaid status on her ability to receive insurance benefits, not the fact that she received Medicaid.

The Court nonetheless finds that the Plaintiff's rescission claim herein is not futile. Although the parties' briefing focused on mutual mistake of fact, contract rescission is an equitable remedy available under multiple legal theories. Throughout her complaint, Ms. Nicholes alleges that Combined engaged in fraudulent conduct to sell policies to a population that included many Medicaid recipients. Ms. Nicholes alleges that Combined was unaware that she received Medicaid only because Combined presented her with the signature page of a pre-filled application, on which a Combined agent indicated that she did not receive Medicaid. The facts alleged, taken as true, support an inference that Combined deliberately sold policies in a manner that insured many purchasers would be unable to receive benefits, and deliberately fostered Ms. Nicholes' mistake of law. Under the principles permitting rescission for a combination of mistake on one side and fraud or inequitable conduct on the other, the totality of the facts alleged are sufficient to state a claim for rescission at this stage of the litigation. A motion to dismiss should be granted only if, accepting factual allegations as true and drawing reasonable factual inferences in the plaintiff's favor, "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

---

5 In *Webb*, there was no other party to the disclaimer, and the plaintiff was assisted by counsel.

Thus, reading the complaint as a whole, the filing of the Second Amended Complaint is not futile within the meaning of the law.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Motion for Leave to File Second Amended Complaint* (Document 24) be **GRANTED** and that the attached proposed *Second Amended Class Action Complaint* (Document 24-1) be **FILED** as a separate docket entry. The Court further **ORDERS** that *Combined Insurance Company of America's Motion to Dismiss* (Document 9) be **GRANTED** as to Count Two of the Second Amended Class Action Complaint, and **DENIED** as to Counts One and Three.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 28, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA