**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

| | | |
|---|---|---|
| **LUCENDA NICHOLES,** | ) | |
| | ) | |
| | ) | **5:16-CV-10203** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **COMBINED INSURANCE COMPANY** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

On February 23, 2018 came the parties, by counsel, all for hearing on ***Plaintiff's Motion to Compel Regarding Defendant's Supplemental Responses to the Fourth and Fifth Requests For Production of Documents***.[1] (ECF No. 98) Appearing for Plaintiff were Christa Collins, Esq., *pro hac vice*, and Damon Ellis, Esq., and for Defendant, Sheryl Bey, Esq., *pro hac vice*, and John Meadows, Esq. After hearing the arguments of counsel, reviewing the pleadings filed in support of same, and having reviewed the pertinent legal authorities, the Court **FINDS** as follows:

### Background

Plaintiff has instituted a class action complaint against Defendant alleging that the insurance company has engaged in "routine, systematic and deceptive practices" selling supplemental insurance policies that under law, provides no benefit its Medicaid customers. Plaintiff asserts claims under the West Virginia Unfair Trade Practices Act and the common law of rescission based on mutual mistake. Plaintiff has alleged that these sales practices have been an ingrained part of Defendant's "culture" for decades, which is evidenced by similar lawsuits that

---

[1] Defendant has filed its Responses (ECF No. 106), to which Plaintiff filed her Reply (ECF No. 108), accordingly, this matter has been fully briefed and ready for decision.

were filed in Alabama and Mississippi, resulting in Defendant's withdrawal from those states' insurance markets. Plaintiff has also alleged that Defendant has continued its deceptive sales practices overseas, specifically in Australia, which eventually garnered the attention of the Australian Securities and Investments Commission. Plaintiff alleges that after the conclusion of the investigation conducted by Australian authorities, Defendant turned over its Australian operations to an affiliate.

In the matter immediately before the Court, Plaintiff seeks information related not only to Defendant's electronically stored information ("ESI") that presumably contains discovery pertaining to insurance sales to Medicaid recipients in West Virginia, but also information regarding substantially similar or identical insurance business practices in Alabama, Mississippi, other states, as well as in Australia. One aspect of the recent breakdown in cooperation between the parties with regard to the discovery issues at hand concern which statute of limitations applies, and therefore, which applicable statute of limitation narrows the scope of Plaintiff's Requests.

During the informal conference held on February 6, 2018, the undersigned attempted to explore some resolution between the parties of the issues raised in Plaintiff's ***Motion***. Plaintiff represented that until recently, the parties' discovery customarily included documentation and information that predated the filing of Plaintiff's lawsuit by four years. Further, Plaintiff asserted that previously produced discovery revealed that Defendant changed its own policies over the years with regard to insurance sales to Medicaid recipients, an issue that goes to the heart of her case. Additionally, Plaintiff argued that since her claims arise in contract, the statute of limitations would be ten years, pursuant to West Virginian law. Defendant countered that Plaintiff's claims are based on violations of the West Virginia Unfair Trade Practices Act, for which the statute of limitations is one year, and Plaintiff's other claims are based on violations of West Virginia

common law, rescission of a contract based on fraud or mutual mistake, for which the statute of limitations is two years. Regardless of which statute of limitations applies, Defendant argued that Plaintiff's Requests go well beyond the statute of limitations addressed by the parties, and are therefore temporally and geographically overbroad and disproportionate to the needs of this case.

## Relevant Law

Pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, a court is required, on motion or on its own, to limit the frequency and extent of discovery, when:

(1) the discovery sought is unreasonably cumulative or duplicative;

(2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(3) the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action; or

(4) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Thus, "[r]elevance is . . . the foundation for any request for production, regardless of the individual to whom a request is made." Cook v. Howard, 484 Fed.Appx. 802, 812 (4th Cir. 2012).

This Rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." Lynn v. Monarch Recovery Management, Inc., 285 F.R.D. 350, 355 (D. Md. 2012) (quoting Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 523 (D. Md. 2010)).

"When a litigant seeks personal and/or personnel information concerning nonlitigant employees or former employees from the litigant's former employer, production of the requested information may invade the nonlitigant employees' or former employees' right to privacy." State ex rel. Westbrook Health Servs. v. Hill, 209 W. Va. 668, 647, 550 S.E.2d 646, 652 (2001). To insure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

In Paull Associates Realty, LLC v. Lexington Insurance Company, 2014 WL 12596397, at *4 (N.D. W.Va. Jan. 9, 2014), the court endorsed situations where a plaintiff "has a 'colorable basis' for suspecting that Defendant is withholding responsive materials." The court ordered the defendant therein to re-answer certain requests for production, because the defendant previously classified certain responses as confidential, yet produced discovery that was "non-objectionable" notwithstanding the objection.

"[I]t remains true that 'relevancy in discovery is broader than relevancy for purposes of admissibility at trial.' " In re: American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation, Nos. 2:14-cv-11870, 2:14-cv-28142, 2016 WL 4411506, at *2 (S.D. W.Va. Aug. 17, 2016) (M. J. Eifert) (quoting Amick v. Ohio Power Co., No. 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D. W.Va. Dec. 18, 2013)).

**Plaintiff's Motion to Compel Regarding Defendant's Supplemental Responses to the Fourth Set of Requests for Production of Documents[2]**

Request No. 1:

[2] For the sake of clarity, Plaintiff's Requests are reproduced verbatim and the undersigned summarizes the parties' respective arguments concerning each of them. Plaintiff advised that she has withdrawn her Request No. 9 from the Fourth set of Requests.

Documents and information sufficient to show the identity of Combined's in-field agent trainers in the four years preceding this lawsuit to the present.

Plaintiff contends that this information relates to Defendant's training and business practices concerning sales to Medicaid recipients and is relevant with respect to her claim of Defendant's deceptive and inequitable conduct, as well as to Defendant's knowledge of its training and business practices being harmful to Medicaid recipients. Plaintiff further contends that this information should not be limited to two years, and avers that prior to the new year, Defendant had customarily disclosed discovery that predated this lawsuit by four years. Simply stated, Plaintiff wants the identities of Defendant's in-field agent trainers to confirm (or not) Defendant's practices of selling insurance products to Medicaid recipients.

Defendant argues that not only is this request invasive to the privacy interests of its non-litigant employees, but also it is too broad temporally and geographically, as it concerns at minimum nationwide information. Moreover, Defendant asserts that it already disclosed the name of the only West Virginia in-field agent trainer: Rex Metrick; he has been the in-field agent trainer in West Virginia since 2012. Additionally, Defendant asserts that this Request is vague, and should be limited to two years because Plaintiff's claims do not satisfy the applicable statute of limitations.

The undersigned would agree with Defendant that on its face, this Request is overly broad insofar as it seeks information as to the identities of in-field agent trainers nationwide, and the civil action herein pertains to violations of West Virginia law. However, the undersigned disagrees with Defendant that the Request should be limited to two years, especially given the parties' previous custom of exchanging information that predated Plaintiff's filing of her lawsuit by four years. Moreover, neither party can agree on what would be an appropriate narrowing of this Request: Plaintiff proffered "east of the Mississippi" and Defendant countered, West Virginia only. It is not

lost on the undersigned that Defendant has already disclosed the West Virginia-only response to this Request, which predates the filing date of Plaintiff's lawsuit by four years. Nevertheless, even a cursory review of a map of the United States shows that there are twenty-six states "east of the Mississippi", including West Virginia, which is too broad of the Request, and disproportionate to the needs of this case.

Nevertheless, Plaintiff's lawsuit concerns Defendant's insurance practices that she has consistently alleged is nationwide, even global in nature, and that it is Defendant's sales "culture" that has driven the challenged conduct subject to this civil action. As more thoroughly discussed *infra*, Plaintiff has demonstrated that through discovery, Defendant's alleged misconduct was substantially similar to its conduct that became subject to lawsuits in Alabama and Mississippi. The Court **FINDS** that nationwide discovery of in-field agents is disproportional to the needs of the case and further **FINDS** that all states east of the Mississippi River is also disproportional. However, the Court **FINDS** that narrowing the scope of inquiry to only West Virginia is also disproportionally too narrow for the needs of the case. Therefore, the Court **FINDS** that it would be relevant and proportional to require Defendant to disclose all in-field agent trainers as follows: 1) as it relates to all states that comprise the 4th Circuit Court of Appeals; 2) additional states that border West Virginia that are outside of the 4th Circuit Court of Appeals, namely, Kentucky, Ohio and Pennsylvania; and 3) the states of Mississippi and Alabama.

Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 1 is **GRANTED IN PART** and **DENIED IN PART**, and **<u>only</u>** to the extent that Defendant is compelled to disclose the identities of its in-field agent trainers as stated above for the four years preceding **<u>this</u>** lawsuit **<u>and</u>** with respect to Alabama and Mississippi, in the four years preceding Defendant's withdrawal from the Alabama and Mississippi insurance markets. With regard to

Defendant's concerns over non-litigant employees' privacy rights, it is noted that a protective order has already been entered in this matter on April 13, 2017. (ECF No. 22)

<u>Request No. 2:</u>

Documents and information sufficient to show employee complaints regarding in-field trainers and their techniques in the four years preceding this lawsuit to the present including but not limited to information captured in Clarify and any other electronic systems identified in request 20 below as well as emails and employee exit interviews.

Plaintiff argues that this information concerns Defendant's company-wide training and business practices as they relate to sales to Medicaid recipients and is further relevant to establishing Defendant's deceptive and inequitable conduct as well as its knowledge of the impact of these practices on its insureds.

Defendant argues this information is too broad as it seeks information nationwide, should be limited to two years, and further, to the extent it calls for production of private information of individuals who are not litigants in this matter. Notwithstanding its objection to this Request, Defendant asserts that it has no responsive documents concerning West Virginia.

As mentioned *supra*, Plaintiff's lawsuit concerns Defendant's insurance practices that she has consistently alleged is nationwide, and global in nature, and that it is Defendant's sales "culture" that has driven the challenged conduct subject to this civil action. As more thoroughly discussed *infra*, Plaintiff has demonstrated that through discovery, Defendant's alleged misconduct challenged herein, was substantially similar to its conduct that became subject to lawsuits in Alabama and Mississippi. The Court **FINDS** that nationwide discovery of employee complaints concerning in-field agent trainers and their techniques, employee emails and exit interviews is disproportional to the needs of the case and further **FINDS** that all states east of the Mississippi River is also disproportional. However, the Court **FINDS** that narrowing the scope of

inquiry to only West Virginia is also disproportionally too narrow for the needs of the case, and as noted above, Defendant has already stated that it has no responsive documents concerning West Virginia. Therefore, the Court **FINDS** that it would be relevant and proportional to require Defendant to disclose all employee complaints concerning in-field agent trainers and their techniques, emails and exit interviews as described in Plaintiff's Request No. 2 as follows: 1) as it relates to all states that comprise the 4th Circuit Court of Appeals; 2) additional states that border West Virginia that are outside of the 4th Circuit Court of Appeals, namely, Kentucky, Ohio and Pennsylvania; and 3) the states of Mississippi and Alabama.

Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 2 is **GRANTED IN PART** and **DENIED IN PART**, and **only** to the extent that **if** such documentation exists, that Defendant is compelled to disclose employee complaints of its in-field agent trainers and their techniques, emails and exit interviews as described in Plaintiff's Request No. 2 as stated above for the four years preceding **this** lawsuit, **and** with regard to Alabama and Mississippi, in the four years preceding Defendant's withdrawal from the Alabama and Mississippi insurance markets. As stated before, with regard to Defendant's concerns over non-litigant employees' privacy rights, it is noted that a protective order has already been entered in this matter on April 13, 2017. (ECF No. 22)

Request No. 4:

All Commissioned Employee Handbooks and drafts of such Handbooks for Combined, and any other subsidiary or affiliate of ACE Insurance or AEON from 2006 to the present, including Ace Insurance Ltd. during the time it sold Supplemental Insurance in Australia. This search should specifically include documents and information in Jeff Frerick's files and those operating under his supervision and direction.

Plaintiff asserts that Defendant's business practices and policies that fostered the improper sales alleged in this civil action governed Defendant's insurance sales practices overseas as well, specifically, in Australia. Plaintiff seeks this information to demonstrate that Defendant is also aware that its business practices cause harm, but takes no action to correct them until it is forced out of the market. Plaintiff argues that discovery so far has shown that affiliate of Defendant's inherited its Australian business, and the affiliate continued Defendant's deceptive and inequitable business practices with Defendant's knowledge. Plaintiff further contends this information should not be limited to two years prior to the filing of this civil action.

Defendant objects to this Request as it concerns documents from its current and former corporate parents, affiliates, both domestic and foreign, and these entities are not parties to this suit. Additionally, Defendant argues that no evidence has been shown that any of these non-party corporate entities acted with or on behalf of Defendant. Defendant asserts that it produced West Virginia handbooks for 2014, 2015 and 2017. Plaintiff's request for handbooks since 2006 from foreign corporate entities is disproportionate to this lawsuit, both temporally and geographically, plus, it is irrelevant to West Virginia Medicaid recipients. Defendant further argues that Plaintiff has not shown any evidence that these foreign entities are the corporate alter egos of Defendant or that Defendant has any control over these entities. The discovery alluded to by Plaintiff concerns a single document that Defendant disclosed to Plaintiff that it obtained from an Australian attorney involved with Ace Insurance, Ltd., which took over Defendant's Australian supplemental health insurance business in 2010.

Though the undersigned agrees with Plaintiff that this Request should not be limited to just two years prior to the filing of this lawsuit, during the hearing held on February 23, 2018, counsel for Defendant produced a 12-page document entitled "Structure of Ace Limited" that outlined the

relationship Defendant had with its overseas affiliates. (ECF No. 110-3) This document indicated that there are over ninety (90) affiliates between ACE Limited and Defendant and no evidence has been shown that Defendant has any control over its affiliates in Australia or that Defendant has any control over any documentation related to the insurance business in Australia. Moreover, the nature of Plaintiff's requests as they relate to insurance practices in Australia is irrelevant and disproportionate as they relate to Medicaid recipients in the United States, let alone West Virginia.

However, as mentioned previously, Plaintiff's lawsuit concerns Defendant's insurance practices that she has consistently alleged is nationwide, and global in nature, and that it is Defendant's sales "culture" that has driven the challenged conduct subject to this civil action. As more thoroughly discussed *infra*, Plaintiff has demonstrated that through discovery, Defendant's alleged misconduct challenged herein, was substantially similar to its conduct that became subject to lawsuits in Alabama and Mississippi. The Court **FINDS** that nationwide discovery of Defendant's Commissioned Employee Handbooks and drafts of such Handbooks is disproportional to the needs of the case and further **FINDS** that all states east of the Mississippi River is also disproportional. However, the Court **FINDS** that narrowing the scope of inquiry to only West Virginia is also disproportionally too narrow for the needs of the case, and it is noted that Defendant has already produced those Handbooks as they relate to West Virginia. Therefore, the Court **FINDS** that it would be relevant and proportional to require Defendant to disclose its Commissioned Employee Handbooks and drafts of such Handbooks as follows: 1) as it relates to all states that comprise the 4th Circuit Court of Appeals; 2) additional states that border West Virginia that are outside of the 4th Circuit Court of Appeals, namely, Kentucky, Ohio and Pennsylvania; and 3) the states of Mississippi and Alabama.

Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 4 is **GRANTED IN PART** and **DENIED IN PART**, and **only** to the extent that **if** such documentation exists, that Defendant is compelled to disclose its Commissioned Employee Handbooks and drafts of such Handbooks as described in Plaintiff's Request No. 4 as stated above for the four years preceding **this** lawsuit, **and** with regard to Alabama and Mississippi, in the four years preceding Defendant's withdrawal from the Alabama and Mississippi insurance markets.

Request No. 7:

Documents and information sufficient to show the Officer and Boards of Directors for Combined Insurance Company of America, Ace Insurance Ltd., Chubb Ltd., Combined Life Insurance Company of New York and ACE Insurance Corporation from 2007 to the present.

Plaintiff again asserts that discovery demonstrated that an affiliate took over Defendant's Australian insurance business just before that affiliate pulled out of that particular market as a result of regulatory pressure. Again, this information is sought to establish Defendant's business culture and practice, and that despite its knowledge and information about the Australian action, Defendant took no action to correct its practices, to the harm of its insureds. Plaintiff argues that through discovery, she learned that Defendant's president Brad Bennett, and other officers, flew to Australia during this time period, thus Defendant's knowledge of the Australian action is imputed.

Defendant argues that Plaintiff wants documents demonstrating the officers and boards of directors for Defendant's affiliate and parent corporation from 2007 to present is not only overly broad temporally, but Plaintiff's Request seeks information from non-litigant parties that has nothing to do with the present lawsuit. Defendant further argues that Plaintiff has not shown how Defendant has control over these documents or how misconduct by others would be imputed to

Defendant. Moreover, the information sought by Plaintiff's Request is public information, nevertheless, Defendant asserts that it has no documentation that would be responsive to this Request.

Referring back to the 12-page document Defendant produced during the hearing, the undersigned is hard-pressed to find that Plaintiff's Request can be accommodated as there has been no demonstration that Defendant has any control or access to information concerning its foreign affiliates or parent corporation that is not already public information. Additionally, Plaintiff represented during the hearing that information requested regarding the Australian entities is governed by the Australian equivalent to the Securities and Exchange Commission, and Plaintiff's effort to procure this information has not borne fruit. Not only is the information sought in Plaintiff's Request No. 7 disproportionate to the issues at bar, both temporally and geographically, the undersigned also **FINDS** that there is no evidence that Defendant has control or possession of the information Plaintiff seeks in this Request. Accordingly, Plaintiff's Motion to Compel supplemental responses from Defendant with respect to Request No. 7 is **DENIED**.

Request No. 8:

All emails, correspondence, memoranda and all other documents and information related to the regulatory investigation conducted in Australia including but not limited to information and documents housed in the office of general counsel and its employees, Jim Heller, Brad Bennett, compliance officers, Officers of the corporation and members of the Board of Directors.

Plaintiff again asserts that discovery demonstrated that an affiliate took over Defendant's Australian insurance business just before that affiliate pulled out of that particular market as a result of regulatory pressure. Again, this information is sought to establish Defendant's business culture and practice, and that despite its knowledge and information about the Australian action, Defendant took no action to correct its practices, to the harm of its insureds. Plaintiff argues that

this information goes to the deceptive nature of Defendant's insurance business practices, its knowledge of same, and that the affiliate that took over its Australian insurance business inherited Defendant's culture as well as continued Defendant's deceptive business practices. Plaintiff argues that Defendant's Chief Compliance Officer, Robert Kasenter, testified during his deposition[3] that Brian Bennett, Defendant's President, flew to Australia during the regulatory investigation, which therefore imputes Defendant's knowledge of its affiliate's business practices in Australia. Additionally, Plaintiff argues that Mr. Kasenter testified that he did not complete his search for the documentation related to the Australian investigation, therefore, Defendant should be compelled to supplement its response to this Request.

Defendant again argues Plaintiff's Request No. 8 asks for "unlimited documentation" about a foreign investigation regarding a foreign entity. Defendant contends that Australia has a different legal system and regulations that are entirely irrelevant to the issues raised in this case, and totally disproportionate to Plaintiff's case as it relates to West Virginia Medicaid recipients who purchased Defendant's products. Again, Defendant argues that there has been no showing that it has control over this information, and that there has been no demonstration that the foreign entity is Defendant's corporate alter ego. Even assuming Defendant's general counsel has this information, it is privileged and therefore not subject to discovery.

With regard to Plaintiff's Request No. 8, Plaintiff's counsel asserts that documentation related to the Australian investigation is actually under Defendant's custody and control at its central office in the United States. However, this information concerns a regulatory investigation by foreign entities concerning a foreign corporation that is irrelevant to Plaintiff's claims against Defendant in this case. The undersigned is concerned that information pertinent to this Request,

---

[3] See ECF No. 108-5.

ostensibly under the control or custody of Defendant's general counsel, would be privileged, as argued by Defendant, however, the undersigned is also mindful that neither a privilege log nor a request for *in camera* review of the documentation allegedly searched by Mr. Kasenter (albeit incomplete) has been raised by Defendant. In short, although the parties have already engaged in some discovery towards the production of information responsive to Plaintiff's Request No. 8, the extent of that cooperation and whether the attorney-client and/or work product privilege relates to same has not been adequately developed by the parties thus far, and is therefore unknown to the Court.

Nevertheless, given the Court's findings with respect to Plaintiff's Requests Nos. 4 and 7 as they relate to the conduct of Defendant's Australian affiliates and the action taken by Australian authorities, the information sought by Plaintiff is both temporally and geographically disproportionate to her claims raised in this civil action. In other words, Defendant's knowledge of its affiliates' conduct in Australia since it took over Defendant's insurance practices in 2010, and any documentation related to same, has no bearing on whether Defendant engaged in deceptive insurance sales practices in West Virginia from 2012 to present. Additionally, there has been no demonstration that Defendant had anything to do with its affiliates' business practices after assuming Defendant's Australian insurance business or that it had anything to do with the subsequent investigation. Accordingly, Plaintiff's Motion to Compel Defendant's supplemental response to Request No. 8 is **DENIED**.

Request No. 14:

All electronic files from every database used by Combined that contains a reference
or information related to Medicaid.

As this Request pertains to ESI, Plaintiff argues that this information is relevant to class certification, including the issues of numerosity and class membership. Plaintiff represents that its 30(b)(6) witness-deponent, Tanya Stojanovski, provided a spreadsheet with searchable filters that were responsive to Plaintiff's ESI requests, however, it was determined during her deposition that they were incomplete[4], and Plaintiff wants to search Defendant's ESI with filters responsive to her requests that are not exclusively controlled by Defendant. In addition, Plaintiff has represented that she would accept production of those documents identified by Dean Demos, Defendant's Chief Information Officer, during his deposition.[5] Plaintiff asserts that Mr. Demos's testimony established that Defendant's electronic books and records are searchable and that searches can be tailored to obtain information that identifies class members as well as validate any claims made by class members, for example:

(1)  Defendant's document management system, called Content Manager, can be sorted and searched using approximately "20 index classes", which was described as being similar to a table of contents or an index to a book.

(2)  Defendant's Clarify system is a SQL, relational database, that can be searched using standard SQL search tools, and that Defendant can produce a "schema" to the database which shows all of the fields in the database.

(3)  Defendant could perform (though it has not performed), keyword searches using the term "Medicaid" of the free form data entry field contained within Clarify.

---

[4] See ECF No. 110-1.
[5] See ECF No. 108 at 7 and 9; attached as an exhibit to Plaintiff's Reply, the transcript of Mr. Demos's deposition taken on January 31, 2018 indicates that the Exhibits identified by Mr. Demos were Nos. 69, 70, and 71. (ECF No. 108-6, at 4)

Finally, Plaintiff disagrees with Defendant's contention that this Request is on the grand scale of production that would cost several months of work and hundreds of thousands of dollars to produce.

Defendant objects to this Request on several grounds: that it is too broad; that it violates HIPAA protections as the information relates to Medicaid recipients; and that it is disproportionate to the needs of this case. Defendant further argues that the various IT systems and platforms it uses are very extensive and not amenable to simple search filters described by Plaintiff. In order to respond to Plaintiff's ESI requests, Defendant asserts that it would have to have its off-shore support team in India write the code in order to perform the searches described by Plaintiff which would take six months or longer at a cost of $450,000. Additionally, Defendant explains that in order to search its system "Content Manager", it would cost $100,000 and take over three months; to search its system "Clarify", it would cost $10,000 and take thirty days; and to search its system "Verint", it would cost $375,000 and take over six months to complete. Defendant also argues that it has already produced over 16,000 to 20,000 pages of ESI documents to Plaintiff and that additional searches would be cumulative and duplicative to that already produced. Defendant asserts that Plaintiff is engaged in a fishing expedition.

It is interesting to note that during the hearing, as well as during the informal conference, that in the parties' meet and confer process, Defendant considered producing the information responsive to this Request if Plaintiff limited her request to a two-year time frame, as opposed to a four-year time frame. It is also interesting that Tanya Stojanovski, the witness who was scheduled to be re-deposed by Plaintiff, but unilaterally cancelled by Defendant, prepared the spreadsheet that included the searchable filters that were only partially responsive to Plaintiff's Request. Notably, Plaintiff has further narrowed this Request to include documents or exhibits identified by

Mr. Demos at his deposition. The undersigned therefore agrees with Plaintiff that the spreadsheet prepared by Ms. Stojanovski and the documents identified by Mr. Demos, both of whom are Defendant's employees, indicate that Plaintiff's Request is not the grand scale undertaking as represented by Defendant.

Moreover, it is clear that Plaintiff met the proportionality standard as she has focused her Request that resulted in at least partially responsive production, and that two of Defendant's agents were/are able to accommodate Plaintiff's Request. In short, this is not a fishing expedition, but a specific reasonable discovery request that is proportional to the needs of this case. That Defendant was considering producing in response to this Request during the meet and confer process *if* Plaintiff limited her search to two years instead of four years further belies Defendant's assertion that an off-shore team is necessary to produce this information. Further, with regard to Defendant's argument that the information sought necessarily implicates HIPAA, the protection order entered in this matter should alleviate Defendant's concerns over the privacy rights of Medicaid recipients. Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 14 is **GRANTED <u>to the extent</u>** it seeks information regarding West Virginia Medicaid recipients predating the filing of Plaintiff's lawsuit by four years.

<u>Request No. 19:</u>

A copy in native electronic format of any information created or maintained by any computer system relating to Medicaid, underwriting, agent discipline, pricing, sale, training, consumer complaint-handling and investigations, maintenance, retention, cancellation, claims handling and payment of benefits under Supplemental Insurance Policies from October 2012 to present in the following systems:

Clarify
Access
M-Text
Combined Online Processing System (COPS)
Verint
Mainframe

Field Compliance Disciplinary Action Tracker
Webmails
AS400 (including Content Manager and LSP)
Self-Service System
Right Start (Marketing Training Practice App)
Combined App (Where you write live Applications)
Life 70
Work Force Management

As discussed in Plaintiff's Request No. 14, *supra*, Plaintiff explains that searching these systems is relevant to class certification, numerosity and class membership. Again, Defendant has provided spreadsheets generated by their own searches that provided information that were partially responsive to Plaintiff's Request, however, Plaintiff argues that the searches would be responsive if Defendant did not control the filters for the searches. Additionally, Plaintiff states that the aforementioned systems were identified by Mr. Demos during his deposition.

Defendant contends that Plaintiff's Request is overbroad and disproportionate to the needs of this case because she seeks every piece of data it possesses. In order to respond to this Request as Plaintiff describes would be a monumental undertaking, both insofar as cost and time is concerned described *supra*, and further, Plaintiff fails to explain how searching these systems will generate more information than what has already been produced in the 16,000 pages of documentation and hours of deposition testimony.

As noted above, during the meet and confer process, Defendant considered producing information responsive to Request No. 19 if Plaintiff agreed to limit the applicable time frame to two years as opposed to four. As discussed above, Defendant's consideration of producing information if Plaintiff reduced the time frame belies the argument that the task of responding to this Request is as grandiose as described by Defendant. In addition, Plaintiff explained both in her pleadings and during the hearing that obtaining discoverable information from Defendant's ESI is

difficult given that Defendant will not budge from its own searchable filters, and from the undersigned's observation of the dynamics unfolding in this case, indicates that searching these systems or platforms can be achieved in-house and with relative ease, given that Tanya Stojanovski prepared a spreadsheet partially responsive to Plaintiff's Requests.

As discussed *supra*, the undersigned finds Plaintiff's Request No. 19 should not be limited to two years prior to the filing of her lawsuit, and that her Request from October 2012 to present is proportional to the needs of this case, as the parties customarily exchanged discovery within the four year time frame from the filing date, until just recently. Certainly, to the extent her Request seeks information relating to Medicaid recipients and Defendant's Supplemental Insurance Policies sales is specific and narrow enough to meet the proportionality standard, however, to the extent this Request seeks nationwide information, the undersigned agrees with Defendant that it is too broad and disproportionate to the needs of this case. As this case pertains to alleged violations of West Virginia law, it is obvious that the ESI sought must include West Virginia.

Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 19 is **GRANTED to the extent** it seeks information that concerns West Virginia Medicaid recipients.

Request No. 20:

Documents sufficient to show the data dictionaries, field codes, reporting capabilities, operating platforms, algorithms and functional capabilities of any computer system relating to the pricing, sale, maintenance, retention, cancellation, claims handling and payment of benefits under Supplemental Insurance Policies from October 2012 to present for the following systems:

Clarify
Access
M-Text
Combined Online Processing System (COPS)
Verint
Mainframe

Field Compliance Disciplinary Action Tracker
Webmails
AS400 (including Content Manager and LSP)
Self-Service System
Right Start (Marketing Training Practice App)
Combined App (Where you write live Applications)
Life 70
Work Force Management

Plaintiff asserts the information sought in this Request is relevant to her claims and to those of the proposed class. As mentioned above, Plaintiff represented that she is willing to accept production of the documents identified by Mr. Demos, and that production of same is not the extensive or expensive undertaking described by Defendant.

Regarding this Request, Defendant states that the time frame is a non-issue, however, it is an inappropriate Rule 34 document request, and further, Plaintiff took nearly four hours of Mr. Demos's deposition testimony which is already responsive to this Request.

This Request does not have the same limitations provided in Request No. 19, and appears duplicative to the earlier Request. Given that Plaintiff is willing to accept production of those exhibits Mr. Demos identified in his deposition, and that this Court previously found Plaintiff's Request No. 19 proportionate to the needs in this case and that it appears Defendant can accommodate Plaintiff's production requests without undue hardship or burden, the Court would **GRANT** Plaintiff's Request No. 20 to the extent that it supplements Request No. 19.

Request No. 22:

User Manuals for the systems identified in Request number 20 above.

Plaintiff explains the need for this information as described for Request Nos. 14, 19, and 20. Plaintiff represented during the hearing that since Defendant refused to provide this

information, Plaintiff is unable to have its own expert determine if searching these systems are as time consuming and expensive as Defendant argues.

Defendant argues that Plaintiff does not explain how its systems user manuals are relevant to her claims, and further, Mr. Demos already provided almost four hours of testimony describing these systems. Defendant asserts that Plaintiff does not demonstrate how these user manuals will provide any additional information relevant to this.

The undersigned agrees with Defendant that the user manuals for the numerous systems appear irrelevant and disproportionate to the needs of this case. However, as previously noted *supra*, Defendant is compelled to disclose the information sought in Plaintiff's Request Nos. 14, 19, and 20 as provided above, therefore, the user manuals for those systems need not be compelled. Further, as it has been demonstrated that Mr. Demos testified that these systems are searchable to produce documentation responsive to Plaintiff's Requests, there appears no reasonable or proportionate basis for the production of the user manuals. Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 22 is **DENIED**.

Request No. 23:

Any policy manuals, memoranda or any other document governing the circumstances under which the Policy Service Center refers complaints or issues to SCI for handling.

Plaintiff argues that the SCI unit processes complaints, including complaints of agent misconduct. Plaintiff seeks this information for class certification issues, but also to determine if Defendant captures and records incidents of agent misconduct and whether it disciplines its agents for misconduct.

Defendant contends that this Request is not limited temporally, however, Defendant represented that it performed a diligent search but cannot locate any documentation responsive to this request since August 2012.

As Plaintiff represented that she would willingly accept those documents identified by Mr. Dean Demos to the extent that they relate to Request No. 23, the Court **GRANTS IN PART** her Motion to Compel, however, given Defendant's representation that it has no documentation since August 2012 that is responsive to this Request, the Court would **DENY IN PART** Plaintiff's Motion to the extent that the Court has no authority to compel the production of information that does not exist.

### Plaintiff's Motion to Compel Regarding Defendant's Supplemental Responses to the Fifth Set of Requests for Production of Documents

Request No. 1:

All Commissioned Employee Handbooks and drafts of such Handbooks or any similar manuals or handbooks for Combined, and any other subsidiary, affiliate or parent from 1990 to the present.

Plaintiff explains that since Defendant has been sued in other states, specifically in Mississippi and Alabama, for business practices related to the sales to Medicaid recipients who are ineligible to receive benefit payments. This information is demonstrative of Plaintiff's allegation that Defendant's nationwide and global deceptive business practices have been in place for decades, and have remained in place despite Defendant's knowledge of the harm these practices have had on Medicaid recipients.

Defendant takes issue with Plaintiff's Request No. 1 as it overbroad, unduly burdensome and that Plaintiff has demonstrated no need to discover information from Handbooks in effect in other states or countries in which it is licensed to sell insurance products. Further, Defendant argues

that Plaintiff's Request No. 1 seeks the production of drafts of these Handbooks since 1990, which is temporally disproportionate to the needs in this case. Defendant argues that Plaintiff's unsupported basis for her Request is that Defendant was sued in other states and then stopped selling insurance products in those states. This case is about Defendant's alleged violations of West Virginia law, therefore, Plaintiff's Request should be limited to West Virginia only, and further, Defendant adds that it had already produced the Handbooks effective in West Virginia for the years 2014, 2015, and 2017. Moreover, Defendant argues Plaintiff's Request is geographically disproportionate insofar as it seeks nearly thirty-year old information from Defendant's affiliates and subsidiaries worldwide, none of which are remotely involved in this lawsuit.

During the hearing, it was clear the parties could not reach an agreement to narrow Plaintiff's Request. Plaintiff made a concession to limit this Request to those states east of the Mississippi, however, Defendant remained steadfast in its argument that only West Virginia related materials are appropriate. Defendant reminds the Court of its decision in White v. Sam's East, Inc., 2016 WL 205494, at *4 in which the Court denied the plaintiff's nationwide discovery requests, and limited the geographical scope to West Virginia because the plaintiff's claims were based on violations of West Virginia law. Though that decision was bound by an earlier version of the discovery rules, perhaps the most important differences between that case and the one at bar are that it was not a class action, and that the plaintiff therein did not consistently allege that the defendant had engaged in a decades-long practice of misconduct that spanned the globe.

In this case, Plaintiff has consistently alleged that Defendant has sold insurance products that provided no benefit to Medicaid recipients or persons similarly insured for decades, and that Defendant has done so despite having knowledge that these particular customers were ineligible for the benefits sold to them. Plaintiff has argued before this Court that the Request seeks to

establish that the same policies and procedure that gave rise to the practices challenged in this case. Plaintiff has demonstrated that Steve Saurs, Defendant's Senior Education Specialist, testified at his deposition[6] that Defendant was sued in Alabama and Mississippi for practices similar to those alleged in this case, and that Defendant withdrew from selling insurance products in those markets.

The Court **FINDS** that nationwide discovery of Defendant's Commissioned Employee Handbooks and drafts of such Handbooks is disproportional to the needs of the case and further **FINDS** that all states east of the Mississippi River is also disproportional. However, the Court **FINDS** that narrowing the scope of inquiry to only West Virginia is also disproportionally too narrow for the needs of the case, and it is noted that Defendant has already produced those Handbooks as they relate to West Virginia. Therefore, the Court **FINDS** that it would be relevant and proportional to require Defendant to disclose its Commissioned Employee Handbooks and drafts of such Handbooks as follows: 1) as related to all states that comprise the 4th Circuit Court of Appeals; 2) as related to those additional states that border West Virginia that are outside of the 4th Circuit Court of Appeals, namely, Kentucky, Ohio and Pennsylvania; and 3) as related to the states of Mississippi and Alabama.

Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 1 is **GRANTED IN PART** and **DENIED IN PART**, and <u>**only**</u> to the extent that <u>**if**</u> such documentation exists, that Defendant is compelled to disclose its Commissioned Employee Handbooks and drafts of such Handbooks as described in Plaintiff's Request No. 1 as stated above for the four years preceding <u>**this**</u> lawsuit, <u>**and**</u> with regard to Alabama and Mississippi, in the four years preceding Defendant's withdrawal from the Alabama and Mississippi insurance markets.

<u>Request No. 2:</u>

---

[6] See ECF No. 108-3.

All documents and information related to Combined's withdrawal from the insurance markets and/or to cease selling its policies in the States of Alabama and Mississippi and any other State's insurance market.

As discussed above, Plaintiff contends that Defendant had been sued in other states for the same kind of business practices complained of in this lawsuit. Plaintiff asserts that discovery thus far has shown that Defendant withdrew from those states' insurance markets. Again, Plaintiff argues that Defendant's business practices with respect to Medicaid recipients or other persons similarly insured is not only nationwide, but global, and that despite the harm Defendant's business practices has on those particular insureds, Defendant continued to engage in same.

Defendant asserts that Plaintiff's Request No. 2 is both temporally and geographically overbroad, irrelevant, disproportionate to the needs of the case; Defendant also objects to the extent it seeks production of documents that would be protected by the attorney-client privilege and/or work product doctrine.

Nevertheless, in keeping with its findings in the aforementioned production requests, the Court **FINDS** that nationwide discovery of all documentation related to Defendant's withdrawal from insurance markets is disproportional to the needs of the case and further **FINDS** that all states east of the Mississippi River is also disproportional. However, the Court **FINDS** that narrowing the scope of inquiry to only Alabama and Mississippi is also disproportionally too narrow for the needs of the case. Therefore, the Court **FINDS** that it would be relevant and proportional to require Defendant to disclose documentation and information concerning its withdrawal from insurance markets as follows: 1) as related to all states that comprise the 4th Circuit Court of Appeals; 2) as related to those additional states that border West Virginia that are outside of the 4th Circuit Court of Appeals, namely, Kentucky, Ohio and Pennsylvania; and 3) the states of Mississippi and Alabama.

Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to Request No. 2 is **GRANTED IN PART** and **DENIED IN PART**, and __only__ to the extent that __if__ such documentation exists, that Defendant is compelled to disclose any documentation and information concerning its withdrawal from insurance markets as described in Plaintiff's Request No. 2 as stated above. However, as Defendant objects to the extent that Request No. 2 seeks information protected by attorney-client and/or work product privilege, the Court directs that Defendant produce a privilege log concerning same, should such documentation and information exist. Accordingly, Plaintiff's Motion to Compel Defendant's supplemental responses to her Fifth Set of Requests No. 2 is **GRANTED IN PART** and **DENIED IN PART** to the extent that Defendant is compelled to produce unto Plaintiff __unprivileged__ documentation and information concerning its withdrawal from the Alabama and Mississippi insurance markets, plus, the other states markets as described above, should such documentation and information exist.

### Rule 37 Implications

Narrowing the scope of Plaintiff's requests for production was necessarily tempered by the representations made by Defendant during the hearing held on February 23, 2018. During the hearing, it was represented to the Court that Defense Counsel unilaterally cancelled a 30(b)(6) deposition of Tanya Stojanovski, who was previously rescheduled for her deposition as discussed *supra*. It was further demonstrated to the Court that at Ms. Stojanovski's first deposition, the parties __agreed on the record__ to reschedule the witness's deposition at a later date. However, Defendant's counsel unilaterally decided to cancel the rescheduled deposition, and in lieu of same, provided an affidavit to Plaintiff's counsel, who advised the Court that she is unable to cross-examine the statements averred in the document. Following a lengthy discussion with Defense Counsel regarding the impropriety of unilaterally cancelling a deposition set by Plaintiff's Counsel

that had previously been agreed to by Defense Counsel, the Court announced to Plaintiff's Counsel that if she wanted to reschedule the deposition, but Defense Counsel refused to agree to reschedule the deposition, and should she file the appropriate motion to compel another deposition of Ms. Stojanovski, then the Court would grant it, and issue the appropriate sanctions. The Court advised Defendant's counsel that it was stunned by her unilateral action, as it violates the basic notions of civility and fair play, which unfortunately, tainted what otherwise appeared as good faith objections **to some** of Plaintiff's Requests.

Unfortunately, this incident is not isolated: Defendant's conduct during discovery, specifically with regard to Plaintiff's ESI related Requests, belies any representation of good faith, which is particularly troublesome given Defendant's own agents, namely, Dean Demos and Tanya Stojanovski, indicated a willingness and capability of producing information responsive to Plaintiff's Requests. The undersigned remains thoroughly unconvinced by Defendant's representations that only through off-shore agencies can it accommodate Plaintiff's ESI Requests, at costs of hundreds of thousands of dollars and in excess of a month to over half a year. It appears to the undersigned that despite Plaintiff's efforts to tailor her ESI production requests in order to comply with the proportionality standards outlined *supra*, she was rebuffed by Defendant, which went so far as to unilaterally cancel her 30(b)(6) witness, therefore perpetuating the discovery dispute that ultimately necessitated Court intervention. Such conduct must be discouraged in order to avoid the waste of valuable and limited judicial resources.

Therefore, pursuant to Rule 37, Plaintiff is invited to file the appropriate motion for sanctions outlining the reasons sanctions are appropriate in this matter and including the time it took prosecute the ***Motion to Compel***, but specifically with respect to those items GRANTED herein by this Court. Defendant shall be allowed to file an appropriate pleading setting forth why

this Court should not issue sanctions and any other objections to the accounting of time filed by Plaintiff.

The Court is particularly interested in the attempts made by the parties to confer in good faith to attempt to resolve the matters in dispute as outlined *infra*. During oral argument, Plaintiff's Counsel repeatedly indicated that she attempted to confer in good faith and that Defense Counsel failed to respond. Should Plaintiff file a motion for sanctions, the Court directs the parties to detail all attempts made by both parties to resolve this matter through good faith discussions. The tenor of the oral arguments, particularly when viewed in the light of the Defendant's unilateral decision to cancel the resumption of Tanya Stojanovski's 30(b)(6) deposition, suggests that the Defendant failed to act in good faith in attempting to resolve the discovery disputes herein. However, the Court is mindful that the focus of the oral arguments was for deciding the discovery dispute and not for determining sanctions. Therefore, the undersigned is giving the parties advanced notice of the Court's concerns in order for the parties to address this matter in future pleadings, should the Plaintiff file a motion for sanctions.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive motion may be contested by filing, within 14 days, objections to this Order with District Judge Irene Berger. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is further requested to send a copy of this Order to counsel of record.

ENTER: February 28, 2018.

Omar J. Aboulhosn
United States Magistrate Judge